## JOHN LARKIN v. DAVID TAYLOR.

### *Error from Johnson County.*

5 433
40 33

5 433
82 125

1. PLEADINGS: PETITION: PRAYER —When two grounds of action are properly stated in a petition, each stating the damages sustained, the prayer for relief on both grounds is sufficiently stated if it appears at the close of the petition, although the amount claimed is only the same claimed as damages in the second ground of action.

2. ID: TRESPASS: LOCUS IN QUO —Where in an action for trespass upon land and injury to growing crops, the petition describes the land on which the trespasses were committed as the property of the plaintiff in Johnson county, the discription is sufficient.

3. ID: PARTIES.—The lessee of land in possession under a contract to give a part of the crops for rent may maintain an action for trespass upon his lands and crops without making the owner of the land a party.

4. TRIAL: ADMISSION OF EVIDENCE.—Threats made by defendant against a witness of plaintiff to deter him from giving his testimony are inadmissible, at least on examination-in-chief and in the course of plaintiff's opening testimony.

5. NEGLIGENCE OF BOTH PARTIES.—The law will not apportion the damages suffered by wrong-doers. When the negligence or carelessness of plaintiff and defendant equally contribute to the injury, the plaintiff cannot recover.

VOL. V.—28.

6. FENCES: WILLFUL TRESPASS.—The law of this state as to inclosures, make the party having a fence, insufficient in law, guilty of negligence, and he cannot recover for injuries done to his crops by stock running at large and roaming upon his land through such insufficient fences, n jr can such a party recover even if the owner of the stock was himself chargeable with negligence, unless it amounts to a willful, wanton or malicious wa t of care.[*]

This action was originally commenced in justice's court. The body of the petition therein was as follows:

The above named plaintiff complains of the above named defendant, and for his first cause of action states:

1st. That on or about the 1st day of June, A. D. 1868, and at divers other times since, and before the commencement of this action, the said defendant unlawfully and wrongfully broke and entered the close of this plaintiff, situate in the county of Johnson, and State of Kansas, and with hogs, horses and cattle did eat up, tread down, depasture and destroy the corn and oats there growing, to the damage of said plaintiff in the sum of $50.

2d. And for second cause of action against said defendant, the plaintiff states: That on or about the first day of October, A. D. 1868, and at divers other times since, and before the commencement of this suit, the said defendant did unlawfully and wrongfully break and enter the close of this plaintiff situate in the county of Johnson, and State of Kansas, and with horses, hogs and cattle did eat up and destroy a large quantity of oats and corn of this plaintiff, then growing, and being to the

[*]1. PLEADING: DEFECT OF PARTIES.—It seems, a defect of parties appearing in the petition, may be taken advantage of by demurrer; where such defect does not so appear, the question may be raised by answer. If the question be not raised in either way the defect will be waived.

2. DEFFINITIONS: CARELESSNESS.—Heedlessness, inattention.

3 ID: NEGLIGENCE.—Omission to do what ought to be done.

4. ID: DEGREES OF.—Carelessness and negligence each have degrees, running from the slightest remission of attention, to the most reckless disregard of all obligation.

FENCE LAWS: THEIR OBJECT.—The object of the law regulating fences is not to protect a wanton trespass, nor a trespass with intention to injure.

damage of said plaintiff in the sum of $100, wherefore plaintiff demands judgment against the said defendant in the sum of one hundred dollars ($100) and for costs of suit.

The case, after proceeding to judgment, was appealed to the district court of the county where a trial was had before a jury, and a verdict rendered for plaintiff below. Motions in arrest of judgment and to set aside the verdict were made and overruled. On the trial the defendant below objected to the introduction of any evidence under the first count of the petition on the ground that it contained no prayer for judgment and objected to any under either count because they contained no description of the *locus in quo.* Exceptions were preserved to the order overruling the objections.

The instructions given by the court to the jury, numbered as they appeared in the record, are as follows:

1. That in order to enable the defendant to prove that plaintiff was guilty of negligence in not having a fence of the lawful height around his crop for its protection against roaming stock of others, it is not necessary for defendant to plead specially such negligence or the want of a lawful fence.

10. Defendant by permitting his stock to run at large is not guilty of negligence.

The court instructed the jury "that it was the duty of the plaintiff to have a lawful fence to secure his crop. Yet although he may not have had a lawful fence, still it would be the duty of the defendant to use reasonable care to prevent his stock from trespassing upon the grounds and crops of the plaintiff, and if the defendant willfully, carelessly or negligently permitted his stock to enter the close of the plaintiff, he would be responsible to the plaintiff for the damage done by such stock to the

plaintiff's crops, although the plaintiff may not have had a lawful fence. The giving of this instruction was excepted to by defendant.

The court instructed the jury that "if they find from the evidence that damage was done by the stock of the defendant and also by the stock of other parties, then they will determine from the evidence, how much of that damage was done by the stock of the defendant. That is a question of fact for the jury, not a question of law." Excepted to by defendant.

"If the plaintiff was the lessee of Mitchell and as such lessee in possession of the premises, he might maintain an action for any trespass committed thereon without joining his landlord with him, he could even maintain such action against the landlord himself, although rents were to be paid to such landlord in kind." Excepted to by defendant.

"The jury are the judges of the facts and of the credibility of the witnesses and may draw such inference from admissions, threats or other statements made by either of the parties as in their judgment is correct." Excepted to.

"It was the duty of the plaintiff to have a lawful fence, or if it was not a lawful fence to make it such; but even though it was not a lawful fence, the defendant would still be liable if he willfully, carelessly or negligently permitted his stock to trespass upon and injure the grounds or crops of the plaintiff."

With the above modification the court gave the seventh instruction, as follows:

"If the jury find from the evidence that plaintiff knew the fences to be so out of repair as not to turn the stock of defendant, and knowingly permitted the same to remain so out of repair from June 1st, 1868, to No-

vember 23d, 1868, during which period defendant's stock committed the alleged trespass and damage, the plaintiff would be guilty of gross negligence."

This instruction was refused:

8th. "If the jury find from the evidence that defendant's pigs or shoats escaped from the pen (where they had been placed by defendant) through an unlawful fence, and went upon plaintiff's crops without this negligence or consent of defendant, and the defendant reclaimed his property and took them away within a reasonable time, the jury will find for the defendant." The refusal of this instruction was excepted to.

The court then charged the jury as follows:

1. "The jury will receive the law from the court, but they are the sole and exclusive judges of the facts in the case, and of the credibility of the witnesses.

2. "The burthen of proof of a fact in issue is upon the party who avers such fact. In this action the burthen of the issues is upon the plaintiff, and in order to recover he must prove, by a preponderance of evidence, the material facts averred in his petition. A mere preponderance, however, is sufficient, though ever so slight.

3. "The material averments in the petition in this action, are: First, that the plaintiff was in possession of the premises described in the petition, during the time referred to in the petition.

4. "Second, that those premises were entered upon, or broken into, by the stock of the defendant, at the times, or about the times named in the petition; and, Third, that damage was done by said stock to grounds or crops, or both, of the plaintiff.

5. "If the jury find for the plaintiff, the form of their verdict will be: 'We, the jury, find for the plaintiff, and assess his damages at $—,' (stating the amount.) If

they find for the defendant, the form of their verdict will be: 'We, the jury, find for the defendant.'

6. "When the jury have agreed upon their verdict, they will reduce it to writing, cause it to be signed by their foreman, and return it into court."

These instructions were all excepted to by defendant.

The court refused the following instructions among others, asked by defendant:

2. If the jury find from the evidence that any portion of the fence around plaintiff's crop was down, or so out of repair as not to turn ordinary stock, and that defendant did not use active means to cause his stock to enter plaintiff's enclosure, the jury must find for the defendant.

3. That the necessary care and diligence required on the part of plaintiff, was to have a lawful fence to protect his crop in order for plaintiff to recover damages done to his crop by defendant's stock.

4. When stock of different owners commit trespass and damage to crops at the same time, in the *absence of proof* as to what a particular brute or horse damaged, the *law infers that the stock did equal damage.*

5. If the jury find from the evidence that William Mitchell leased the cropping ground to plaintiff, and that said Mitchell was interested in the growing crops thereon to the extent of one-third or any other interest therein, then the jury will find for defendant.

Other of the facts appear in the subjoined opinion :

*A. Smith Devenney*, for plaintiff in error.

*No counsel* for defense.

*For plaintiff*, it was maintained :

1. The court erred in the admission of testimony under the first count of the petition of defendant in error;

there being no prayer for judgment under said count, nor a general prayer for judgment for the amount therein claimed. 1 *Code R.*, [*N. S.*,] 278; *Nash's Pl.*, 53 *and* 54; 3 *How. P. R.*, 292; *Civ. Code*, '68, § 87, *subd* 3, *Gen. Stat.*, 647.

2. The petition does not describe the *locus in quo* in either count. 1 *Chitty's Pl.*, 394, 279, 280; *Gould's Pl.; Stephens' Pl.;* 6 *N. H.*, 215; 2 *Harr. & Johns.*, 341; 2 *Aiken*, 172; 16 *Wend.*, 663; 8 *id.*, 476; 5 *Pick.*, 230; 5 *Wisc.*, 27.

3. The court should have made Wm. Mitchell a party to the action, he being a party in interest in the crops alleged to have been damaged by stock belonging to plaintiff in error at the time of the alleged trespasses. *Civil Code*, '68, § 26, 635; *id.*, § 41, 637; 3 *Blackst. Com.*, 219, *note* 6; *Gould's Pl.*, 356; 4 *Kan.*, 350.

4. The court should have dismissed the action, for the want of necessary parties. The judgment against Larkin cannot be plead in bar by him, in an action against him by Mitchell, for damages done to his (Mitchell's) interest in the crops, although Taylor has recovered a judgment for all the damage done to the entire crops. *Civil Code*, '68, 704, § 397.

5. The court erred in admitting in evidence certain threats alleged to have been made by Larkin to one Wm. Mitchell, they being no part of the *res gestæ.*

6. The court erred in refusing the instructions asked by the defendant, and in giving the instructions.

7. As to the second instruction, asked and refused, see *Comp. L.*, 599, § 1; 9 *Wisc.*, 202; 11 *id.*, 160.

8. As to the third instruction, asked and refused. Opinion of Judge VALENTINE in the cases of *Caulkins v. Mathews*, and *U. P. R. R. Co. v. Rollins, et al.*; 18 *Wisc.*, 331; 19 *id.*, 604.

9. As to the fourth instruction, asked and refused. *Russell vs. Tomlinson*, 2 *Conn.*, 206; 20 *Barb.*, [*N. Y.*,] 479; 20 *Pick.*, 479; 2 *Vt.*, 9; 17 *Wend.*, 562; 1 *Denio*, 495, 501.

10. The court erred in overruling the motion of plaintiff in error for a new trial. No judgment could be entered on the verdict, where there are several counts in the petition, one of which is good and one is bad, and there is a general verdict upon all the counts in favor of the plaintiff, unless the plaintiff can show that the testimony related to the good count only. *Dewey v. Fifield*, 2 *Wisc.*, 73; 5 *Johns.*, 476; 2 *id.*, 573; 2 *Mass.*, 53; 15 *Wisc.*, 134.

We are aware that some cases have held that where all the counts relate to the same cause of action, this doctrine does not apply, but that the court will allow the verdict to be altered so as to refer to the good counts, [3 *Pick.*, 348;] but the counts in this case are not of this character.

*By the Court*, KINGMAN, C. J.

The plaintiff in error was sued for damages done by his stock to the growing crops of the defendant in error. A trial was had which resulted in a verdict and judgment against the plaintiff in error. He brings the case to this court, alleging various errors for which he claims that the judgment should be reversed. These alleged errors will be examined in the order in which they are presented.

PLEADINGS : Petition, prayer of. *First.* There were two grounds of action separately stated in the petition. In the first there was no prayer for judgment. The petition closed with a prayer for judgment for one hundred dollars, a

sum larger than the verdict or judgment. The testimony applied to both counts in the petition. There was no error in this. The prayer for relief went alike to both counts. *Marquett v. Marquett,* 12 *N. Y.,* 341.

*Second.* The petition describes the land upon which the alleged trespasses were committed as the land of the plaintiff, in Johnson county. This description is sufficient. It was enough at common law. [1 *Chit. Pl.,* 503.] The reference made by counsel to Chitty are to the "new rules," not in force in this state. None of the authorities cited sustain the plaintiff in error on this point, save where legislation to that effect has preceded the decision. We know of no legislation of the kind in this state.

*Third.* In the progress of the trial it appeared that the plaintiff was occupying the ground on which the alleged trespasses were committed as lessee, and that the owner, William Mitchell, was to have a portion of the crop for rent; whereupon the defendant moved the court to make Mitchell a party, which was denied. Defendant then moved the court to dismiss the action because the plaintiff was not the real party in interest, which was likewise overruled.

The decision on the first motion was right. The lessee in possession had a right to his action. He could only recover for the damage done him; but he was not compelled to wait the action of his landlord, nor was it necessary to make the landlord a party to determine the questions at issue.

Even had there been a defect of parties, it could not be reached in this way. When a defect of parties appears in the petition, the defendant may demur. Where they do not appear in the petition they may be taken advantage of by answer, and if no objection be taken,

*Marginal notes:* DESCRIPTION OF the close.    PLAINTIFF'S INterest in the land: Parties.

either by demurrer or answer, the defendant shall be deemed to have waived the same. [*Code*, § 91.] Without deciding whether the landlord could have been joined or not we do not think there was any defect of parties in this case. The decision on the second motion was right for the same reason, and the further one, that the evidence at that time showed that the plaintiff had settled the rent and his lessee had made no deduction on account of the damages done. It was in Mitchell's testimony, subsequently given, that the facts are made to appear as is claimed by the plaintiff. On any of the grounds the motion was rightly overruled.

TRIAL: INTRODUC-
tion of testimo-
ny: Threats.

In the progress of the trial while the plaintiff was introducing his testimony, and before any testimony had been offered by defendant, and while the witness was being examined in chief, the court, over defendant's objection, allowed the witness, Mitchell, to testify as follows: "I had a talk with defendant on yesterday, and he said if I did not go home and not testify he would kill me, or make it cost me something more than the damages." The admission of this testimony was clearly wrong. It tended to throw no light on any of the issues in the case, and could only be used to create a prejudice in the minds of the jury against the defendant, at a time when such feelings should be carefully excluded. In this connection it seems proper to notice the instructions of the court on this point. The defendant asked that the jury be instructed to disregard all evidence of threats made by defendant against the witness, Mitchell. The court refused to instruct, but told the jury that they might draw such inferences from admissions, threats, or other statements made by either of the parties, as in their judgment were correct. This seemed to give judicial sanction and force to the testi-

mony, and was calculated, in our judgment, to mislead the jury. Their duty was to pass upon the rights of the parties as presented by the testimony, irrespective of the good or bad character of either of the litigants. If the defendant was a bad man, that fact gave the plaintiff no right to recover damages against him; but by this instruction, as well as by the previous admission of the testimony, the jury were allowed to take into consideration a fact which represented the defendant in a most unfavorable light; which represented him as unwilling to submit his case fairly to the tribunals appointed by society to settle the conflicting claims of its members; and further, as a man who would resort to the worst of crimes to prevent the facts of his case from being presented in a perfectly lawful way to such tribunal. The mind naturally revolts from such conduct, and the jury retired to make up their verdict with this evidence still ringing in their ears and impressed upon their attention by the charge of the court. Under such circumstances it could hardly have failed to influence their minds in a case of closely balanced evidence such as the record discloses, on at least one of the points necessarily involved in the trial of this cause. Whatever reprobation or punishment the party using such means to interfere with the due administration of justice may deserve, it is not by giving a verdict against him in an action of this character that such punishment should be sought. The testimony was inadmissible and the instruction erroneous.

The remaining question in this case arises upon the instructions. Ten were asked by the defendant, of which the first and tenth were given and the others refused or modified materially by the court. To this action of the court no exception was taken and, of course, will not be considered by this court. But the instructions actually

given were excepted to, and raise much the same questions as would arise upon the instructions refused.

The second, third, seventh, ninth and tenth instructions are all applications of the law relative to inclosures and the rights and liabilities of persons allowing their stock to run at large, and of persons having their crops damaged by such stock by reason of the fences not being such as the law requires, and taken together embrace about these propositions: It was the duty of the plaintiff to protect his crops by a lawful fence; but even if he did not have such a fence the defendant would still be liable if he willfully, carelessly or negligently permitted his stock to trespass upon and injure the grounds and crops of the plaintiff: That the defendant was at liberty to turn his stock upon the commons to graze, and if such stock should wander upon the premises of plaintiff through an unlawful fence and then should damage plaintiff's crops, the plaintiff cannot recover therefor, unless he willfully, carelessly or negligently permitted his stock to so trespass: and that it was not negligence to permit his stock to run at large.

There is some difficulty, not so much in determining the law as in making an application of its principles to this case. There is nothing in the testimony shown by the record (and the evidence seems to be all in it, though it is not so stated) which tends in the slightest degree to show any willful, careless or negligent conduct on the part of the defendant, save that he turned his stock upon the prairie to graze, from whence they strayed into the inclosure of the plaintiff through a fence abundantly shown to be not such as the law requires. If such be the facts, the repeated use of the terms carelessness and negligence had no proper place in the instructions, because they were not applicable to the evidence.

But the instructions were erroneous in any state of the case. There was no explanation of the words negligence or carelessness, or of the different degrees of each of them, so that the jury were at liberty to give a verdict against the defendant if he was guilty of the want of the slightest possible degree of care; carelessness and negligence are nearly equivalent terms.

The one implies heedlessness or inattention, and the other an omission to do a thing which a person ought to do, and of each there are degrees running from the slightest possible remission of attention to one's duties, from which no man is exempt, to the most reckless disregard of all one's obligations.

We suppose it to be a principle of law of general application, that a person himself guilty of negligence in a particular matter cannot recover of another whose negligence equally contributed to the injury. Where both parties are in the wrong there can be no recovery of the one against the other. The law will not apportion the damages suffered by wrong-doers. These are merely different ways of expressing the same rule, so general in its application as to have become axiomatic. In this case, if the defendant was careless or negligent of his stock, the plaintiff was equally so as to his fence, and the carelessness of both contributed to the unfortunate result. The instructions, in effect, are that the plaintiff could not recover if he was negligent, unless the defendant, also, was negligent, thereby authorizing the jury to infer that however defective was the fence of plaintiff, yet if the defendant was careless or negligent of his stock a recovery could be had. This is not the law. We understand the law of inclosures in this state to be, that before a party can recover for injuries done to his crop he must protect it by a lawful fence. Failing to have such a

fence, he is deemed by the statute to be so negligent of his property that he cannot recover damages for trespass thereon occasioned by reason of the defective fence. In effect the statute has declared what constitutes negligence in such a case. We do not intend to say that when the acts of a party are of such a character as to show a willful intent to commit a trespass, a recovery may not be had against him even though the injured party may not have his grounds inclosed by a lawful fence. In such a case it is not carelessness or negligence that is the cause of the injury. It may include both, but something more is necessary to authorize a recovery. The object of the law of inclosures is to permit stock to run at large and graze on the prairie and relieve the owners thereof from an action for damages, should they wander upon the land of another, unprotected by a lawful fence.

It is not to protect a wanton trespasser, or a man who shows rather an intention to injure his neighbor than to enjoy the benefits the law allows him. Such conduct would not be negligence or carelessness in the ordinary acceptation of those terms. It would not be a mere heedless inattention, but a willful or wanton trespass not intended to be protected by our fence laws. But when the plaintiff in a case abundantly shows a want of care which the law requires on his part, he cannot recover from a defendant chargeable only with a like want of care. He must show that the defendant's negligence was so gross as to amount to a willful or malicious want of care, to entitle him to recover, and the law should be so explained to the jury. We think the instructions on this point were erroneous in not explaining what degree of negligence was necessary to be shown on the part of the defendant to entitle the plaintiff to recover.

We think the fourth instruction fairly presented the

law on the point therein involved.   The law of the fifth
and sixth we have already considered in this opinion.
For the errors indicated this cause must be reversed and
a new trial ordered, in conformity with the principles
herein indicated.

All the justices concurring.