PICKWICK GREYHOUND LINES, INC., *v.* SILVER.

(Division A. Dec. 16, 1929.)

[125 So. 340. No. 28214.]

766

Wells, Jones, Wells & Lipscomb and J. M. Stevens, all of Jackson, and Ruff & Johnson, of Lexington, for appellant.

768

Barbour & Henry, of Yazoo City, and **Boothe & Pepper**, of Lexington, for appellee.

Argued orally by **J. M. Stevens** and **H. S. Lipscomb**, for appellant, and by **J. F. Barbour**, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee sued the appellant for a personal injury alleged to have been received by him because of the negligence of the appellant's servant, and recovered a verdict and judgment for fifteen thousand dollars.

Appellant is a corporation engaged in operating a passenger motorbus line over the public roads, and, on the occasion in question, appellee was a passenger on one of its busses for transport from Jackson, Mississippi, northward to Memphis, Tennessee. The bus in which appellee was traveling was overturned near the village of Gwin, in Holmes county, thereby causing his injury. The road curves at the place where the accident occurred, and the bus skidded and overturned just as it entered the curve. The evidence for the appellee discloses that the curve was sharp, but does not disclose the angle of the curve; while the evidence for the appellant is to the effect that it was not sharp, that its departure from a straight line is about forty-nine degrees and thirty minutes. This curve can be seen for some distance in approaching it from the south, and a few days prior to the accident the road authorities had worked the road at the curve and had widened it by placing loose dirt on each side thereof, and in doing so had permitted loose dirt, of the character designated in the evidence as "Gumbo," to cover the surface of the road. In doing this work, the level of the road had been changed, so that it sloped toward the outer edge of the curve, which was lower than the inner

edge. The road was on an elevation; exactly how high at the place where the accident occurred does not appear. There had been a great deal of rain prior to the accident, and the road had become slick, so much so that at least two automobiles, that passed over the curve at a low rate of speed a short time prior to the accident, skidded. The driver of the bus knew of the existence of the curve, could see it for some distance as he approached it, and saw the evidences of its having been recently worked and that the gravel thereon was covered with dirt. He stated, however, that it looked firm to him and that he did not discover that it was not until he entered the curve.

According to the evidence for the appellee, the bus entered the curve at a speed ranging as high as forty miles an hour, the driver thereof applying his brake after entering the curve, whereupon the bus skidded and turned over. The driver testified that he slowed down to a rate of speed not exceeding twenty-five miles an hour, and released his brake before reaching the curve. He admitted that, with the road in the condition it was, to have applied his brake as he entered the curve would have caused the bus to skid.

The appellee's contention that he was entitled to a directed verdict is without merit, and therefore it becomes necessary for us to consider the errors alleged by the appellant to have been committed during the progress of the trial.

Appellee, in order to prove that the appellant is a common carrier charged with the care incumbent on such a carrier for the safety of its passengers, introduced, over the appellant's objection, a certificate from the Railroad Commission that the appellant had complied with the statute and was authorized to operate passenger motorbusses for hire over the public roads. This certificate set forth that the appellant had "filed insurance policies and bonds," etc., and the ground of the objec-

tion thereto is that it discloses to the jury the fact that the appellant carried insurance on its liability for injury to its passengers. Counsel for the appellee stated that he would not, and he did not, read that provision of the policy to the jury, and a line was then drawn through it with a pen or pencil, which left the words easily legible. The court then overruled the objection, and the certificate was introduced in evidence and was carried out by the jury when it retired for the consideration of its verdict. It will not be necessary for us to pass on this ruling of the court, for the judgment of the court must be reversed for other reasons, and on a retrial of the case this question, in all probability, will not again arise.

The appellee's first and third instructions to the jury permitted it to convict the driver of the appellant's bus of negligence without reference to the condition of the road, and the appellant's complaint thereof is without merit. The jury were warranted in finding from the appellant's evidence that the curve was sharp, the road graveled, and the bus, which was large and heavy, entered the curve at a speed of approximately forty miles an hour; the driver thereof applying the brake after the bus entered the curve. From this evidence the jury would have been warranted in concluding that the driver of the bus was negligent, and that it would have skidded and turned over because of the speed and the application of the brake although the road had been in good condition.

The third instruction also permitted the jury to award the appellee damages for a permanent injury and to allow him medical expenses that might be thereafter incurred by him because thereof. The court refused a request by the appellant to instruct the jury not to award the appellee damages for a permanent injury. The appellee testified that he had incurred medical expenses

to the amount of one hundred dollars, and the appellant was refused an instruction limiting the appellee's recovery for such expenses to that amount.

The appellee suffered an injury to his head of a painful but temporary character, and claims also to have suffered the dislocation of one of the vertebrae of the spinal column, from which he suffers continuous pain and is prevented from work. Two physicians corroborated him as to this, and stated that his spinal injury would be permanent and would probably grow worse unless relieved by medical treatment, and even with such treatment the injury might remain permanent. This treatment was to put the appellee in a frame with weights attached to his feet in which he would have to remain, according to one of the physicians, six or eight months. Whether the appellee was called on to undergo this serious treatment was at most a question for the jury, and its outcome was uncertain so that whether the appellee's injury was permanent was for the jury's determination.

The authorities are in conflict as to whether medical expenses, which it is reasonably certain a person injured will necessarily incur in the future, are recoverable. 8 R. C. L. 545. It will not be necessary for us to decide that question, for the reason that for such expenses to be recoverable as damages, a proper allegation relative thereto must be included in the declaration. Chapman v. Powers, 150 Miss. 687, 116 So. 609. There is no such allegation in the declaration here. The only allegation therein is as follows: "He has been put to great expense for doctors, nurses, medical and surgical treatment, the attention in an effort to cure him and to save his life amounting to five hundred dollars." Moreover, the evidence furnishes no basis whatever for determining what the appellee would have to pay for such medical treatment thereafter to be incurred, if any. It follows from this that the appellant's recovery for medical expenses

should have been limited to such as had been theretofore incurred by him.

The fourth instruction for the appellee, which the reporter will set out in full, is unobjectionable. The driver of the bus testified that he saw that the condition of the road had been changed by work thereon, and that the road was wet from recent heavy rains was admitted. If this changed condition in the road reasonably indicated to the driver of the bus that more than the usual care should be exercised by him in entering the curve, the duty to exercise that higher degree of care became incumbent on him, and a failure so to do would be negligence. A material element of this negligence would be the speed of the bus as it entered the curve. The driver practically admitted that this speed was twenty-five miles per hour, and it was for the jury to say whether or not this was too high, and, if so, whether it contributed to the skidding and overturning of the bus. It must be borne in mind here also that the bus was large and heavy. The instruction is not aptly phrased, in this, in submitting the negligence vel non of the driver of the bus as to the speed thereof under the circumstances its language is, "If you believe from the evidence it was a careless way to handle the bus;" the word "negligent" instead of the word "careless" should have been used. "Carelessness and negligence are nearly equivalent terms. The one implies heedlessness or inattention, and the other an omission to do a thing which a person ought to do." Larkin v. Taylor, 5 Kan. 433. The words are so nearly synonymous (45 C. J. 633) that the use of the one for the other here could not have harmed the appellant, particularly when the other instructions to the jury are taken into consideration. The concluding language of the instruction, "and this is your duty regardless of every other fact and circumstance in the evidence," while unnecessary, deprived the appellant of the benefit of no

evidence that would have warranted a verdict in its favor. Were the fact otherwise, a serious question might be presented.

As bearing on the speed of the bus when it skidded and turned over, the appellee introduced evidence to the effect that the bus was practically demolished, the seats having been broken loose and thrown to the front; and, over the objection of the appellant, that a woman was badly mangled, her head having been crushed and both of her arms and legs having been broken. The condition of the bus after the accident was admissible as tending to show the speed at which it was running when it skidded and turned over (Richardson v. Nelson, 221 Ill. 254, 77 N. E. 583; 45 C. J. 1230), and it would seem that the mangled condition of one of the passengers in the bus would be admissible for the same purpose. It also appears from the evidence that this woman was sixty-five years old, and that she died from her injuries after being removed from the bus and while being taken to a nearby residence. The death of this old woman was kept prominently before the jury by the appellee in his counsel's examination of several witnesses. It was not necessary for the witnesses to disclose the death of this woman when testifying to her injuries, but if it was inadmissible for that reason, no relief can be given the appellant here for the reason that no objection thereto was interposed in the court below.

When the witness Gwin was testifying for the appellant, he was asked if he found any passengers injured, and stated, among other things, that "a lady was lying in there right on the floor . . . badly mangled." An objection was then interposed by counsel for the appellant, and sustained, whereupon counsel for the appellee said to the court: "Our contention is that the wreck was caused because of excessive speed, and showing the condition of the passengers that were injured and killed and the bloody condition of the car by witnesses we say

is highly competent. We want to show the conditions there of the injured passengers.'' The objection to the testimony was then overruled. When this ruling was made, it did not appear that it would be unnecessary to disclose the death of any of the passengers in order to acquaint the jury with their mangled condition, and when that fact did appear with reference to this old woman no objection thereto was interposed.

Testimony was also introduced by the appellant that this old woman was accompanied by a grandson about seven years old who was badly frightened and crying, and who was not cared for thereafter by the appellant's servants. The appellant's complaint thereat cannot be here considered, for the reason that the record discloses no objection thereto.

This brings us to the most serious question of the case. In the concluding argument to the jury one of appellee's counsel used the following language: ''Gentlemen of the Jury: This case has brought something to light which I did not know before, but which I had long suspected. A great fraud was perpetrated on the state of Mississippi by this defendant. In June 1928, J. E. Hill and his son went before the Railroad Commission and got a certificate from the Railroad Commission to operate their busses over the highways of the state of Mississippi, with a provision in it that they could transfer the ownership to the Capitol Stages, Inc., a Mississippi corporation. The Capitol Stages, Inc., without any authority from or knowledge of the Railroad Commission, sold this bus line to the Greyhound Lines, who in turn sold it to the Pennsylvania Railway corporation, a large corporation operating bus lines all over the entire world, and which does not pay one cent of taxes to the state of Mississippi. The Greyhound Lines owned by the Pennsylvania Railroad immediately pulled the light busses off the road and put big heavy Greyhound busses on the road that

run down the center of the roads and don't give you an inch, and gather all the passengers they can get any money out of, and cut up the roads of the state of Mississippi which you and I and other over-burdened taxpayers are struggling to maintain." The court overruled an objection to this argument, except "as to any nonpayment of taxes by the Pennsylvania Railroad Company," and to that extent only charged the jury to disregard the argument. An exception to this ruling was properly reserved. Two bills of exception appear in the record setting forth this argument, and according to one of them, the appellee's counsel, immediately after the court ruled on the objection to the argument, "told the jury to disregard any reference to the matter of tax payments, and explained to the jury that the reference and the argument to which objection was made was for only one purpose, to-wit," the substance of which was that the defendant was a common carrier and must take the public roads as it found them, and is liable to its passengers for negligence in the operation of its busses thereon, and that its duty to passengers increases with the bad condition of the road.

The only evidence in the record on which this argument could have been based, in substance, is as follows: The driver of the bus stated that when he entered the curve the bus was in the center of the road. In the cross-examination of a passenger on the bus, and a former employee of the appellant, introduced as a witness by the appellant, appear the following questions and answers:

"Q. He (referring to the driver of the bus) was running about in the center of the road? A. Yes always about the center of the road.

"Q. They usually get up there because of the weight of the bus? A. Yes sir.

"Q. That was the way this bus was running on this curve? A. Yes sir."

In his redirect examination appear the following questions and answers:

"Q. What was the Pickwick Bus doing on this line? A. The heavy busses were taken off the Mississippi roads at Memphis and brought this bus down here, these busses.

"Q. The Capitol Stages is a Mississippi Corporation? A. Yes sir.

"Q. At that time it weighed considerably less than the Greyhound busses? A. Yes sir.

"Mr. Barbour: We object to that. He didn't say that.

"Court: Sustained. (Exception by defendant.)

"Q. Did you call it Pickwick or Greyhound? A. I sold to the Greyhound people.

"Q. That bus which was being operated down here at that time, was that the Greyhound people's? A. It was owned by the Greyhound people."

He was then again cross-examined by counsel for the appellee as follows:

"Q. And the Pickwick line and the Greyhound are all a corporation? A. Yes sir, the Greyhound.

"Q. And the Greyhound is owned by the Pennsylvania Railroad? A. I understand that the Pennsylvania Railroad owns it."

What the witness meant by the statement that "the Greyhound is owned by the Pennsylvania Railroad" is not clear, but, whatever he meant, the fact could have no relation to the appellant's liability here, nor could the fact, if such it is, that the Pennsylvania Railroad Company is "a large corporation operating bus lines over the entire world," and that it "immediately pulled the light busses off the road and put big heavy Greyhound busses on the road that run down the center of the roads and don't give you an inch," have any relation thereto. It is not clear from the evidence whether the busses used by the appellant in Mississippi at the time of the accident were heavier or lighter than those formerly used by it or its predecessors, but if the busses were heavier than those

formerly used, that fact should not have been taken into consideration by the jury; there being no evidence that the bus in which the appellee was riding when injured was heavier than the law authorized the appellant to run over the public roads.

The appellant had the right to "gather all the passengers that they (it) can get any money out of;" and that it "cut up the roads of the state of Mississippi which' you and I and other over-burdened taxpayers are struggling to maintain," as to which there was no evidence, also had no relation to the appellant's liability to the appellee. This argument had no bearing on the purpose for which counsel for the appellee states that he used it, and its only effect could have been, and probably was, to cause the jury to charge the appellant with habitual and flagrant disregard of the rights of the public in the use made by it of the public roads, and to so prejudice the jury against the appellant as to cause it to render a verdict against it on less evidence than it otherwise would. The appellant had a sufficient load to carry because of the grievous injuries the overturning of the bus inflicted on its passengers, and this load should not have been increased by argument of the character here under consideration.

Reversed and remanded.