BRADY, Justice.
This is an appeal from a judgment of the Circuit Court of Jackson County, Mississippi, wherein the appellee was awarded a verdict of $40,000 against appellants for personal injuries. The pertinent facts tersely stated are as follows:
On October 17, 1964, at approximately 9:30 a. m. on a clear, dry, sunny day the appellee was proceeding in an easterly direction in the south lane of U. S. Highway ’90. This highway is a four-lane highway with two main travel lanes in each drive and two accessory lanes to the right of each •drive. There is a left turn on each drive at the intersection of Highway 90 and Washington Avenue. When appellee reached the intersection of Highway 90 and Washington Avenue, she entered the same to make a left turn to the north. The record discloses that when she entered the intersection, she had the green arrow indicating that she could turn to the north from the south side of Highway 90 into Washington Avenue to proceed north. At the time, the other lanes of traffic on Highway ■90 going west had a red light indicating that traffic should stop.
Appellee had entered the intersection in the north drive, had proceeded across the same, and had reached the extreme north lane of Highway 90 before appellant Frost entered the intersection. As appellee was proceeding northward onto Washington Avenue and as she was crossing the furthermost north driveway of Highway 90, her vehicle was struck broadside by the car being driven by appellant Frost. The position of the two cars is substantiated by the testimony of Eugene Duncan Nobles who was parked at the intersection waiting for the light to change at the time the accident occurred. The speed of the two vehicles was testified to by J. B. Marsh, who likewise witnessed the accident.
The testimony of these two witnesses clearly indicates that appellant Frost was traveling at a speed of approximately thirty miles per hour at the time he began to apply his brakes and that he swerved to the right in an effort to avoid striking appellee’s car. Patrolman Adolph A. Ross, Sr. testified that the car being driven by Frost put down light skid marks measuring approximately thirty-five feet prior to the time he struck the right side of appellee’s car. The skid marks laid down by Frost’s car were in the northernmost lane of the north drive of U. S. Highway 90 and turned to the right. Patrolman Ross testified that he, along with another officer, immediately after the wreck checked the traffic light and found that it was properly synchronized so that at the time the light was green in the north drive of U. S. Highway 90, it was red in the south drive. He testified that the green arrow on the light remained on for a period of only twenty-five seconds to allow left turns from both drives of the highway at this intersection.
Appellant Frost admitted that when he approached the intersection, two vehicles were stopped on the north drive of the highway headed in a westerly direction. He testified that he drove around the right side of these vehicles into the extreme right or north lane, heading west into this intersection without slowing. He stated that since *476 these two vehicles were stopped in the lane to the left and ahead of him, he could not see the intersection distinctly. When asked why he drove his vehicle into the intersection at this time he testified as follows:
“Q. Do you know why these vehicles hadn’t started moving at the time you came into that intersection?
“A. They could see her pre-empty (sic) the intersection.
“Q. They could see her pre-empty (sic) the intersection. All right, and by pre-emptying (sic) you mean she was in there first?
“A. As far as I know.
“Q. She was in the intersection then before you entered?
“A. Right. Against the green light.”
Frost further testified, in substance, that it was his practice to try to make all lights as they turned red in order to avoid having to stop so as to save gasoline and time. He admitted that he made a statement to this effect after the collision and that this is what he tried to do in this particular case. Frost would not deny stating at the scene of the collision that he was running late for a meeting which had been arranged for him in Gulfport, Mississippi. Fie admitted that when he first saw appellee, both he and appellee were in the intersection and that he could not see her until he was out in the intersection. He concedes further that his vehicle struck her vehicle in the right side. Frost admitted that as he approached the intersection about 150 feet therefrom he was traveling at about thirty miles per hour and that he did not reduce his speed between the two points until he applied his brakes.
The proof in this case is sufficient to support a finding that appellant Frost was guilty of negligence which proximately caused the accident and the injuries occasioned thereby. Appellants charge that the appellee was negligent in failing to keep a proper lookout and in traveling through the intersection at a rate of speed which) did not evidence due regard for existing traffic conditions. Appellants received an instruction advising the jury that they would reduce any amount which otherwise they could have awarded the appellee in, proportion to the appellee’s negligence. Under this instruction the comparative negligence of appellee was presented squarely to, the jury for proper consideration.
Four assignments of error are urged by the appellants. The first is that the trial! court erred in permitting the appellee, plaintiff below, after trial had begun, to amend! her declaration so as to include a herniated, disc as a part of her injuries and in not granting appellants a continuance at that time. We do not find any merit in this contention.
The amendment was occasioned by the fact that appellee’s doctor, after having-treated her for a prolonged period of time, concluded that she had sustained a herniated disc. As a result, the declaration was amended so as to conform to the proof which was to be offered. This is not an amendment setting up a new cause of action,, and this Court has heretofore repeatedly held that amendments are not in error which-permit the pleadings to conform to the proof so long as a new cause of action is not alleged. Mississippi Power & Light Co. v. Walters, 248 Miss. 206, 158 So.2d 2 (1963). In the Walters case we said:
Section 1511, Code of 1942, Rec., expressly provides that the court shall have full power to allow amendments to be made in-any pleading or proceeding at any time before the verdict, so as to bring the-merits of the controversy between the parties fairly to trial. The above mentioned amendments in our opinion were properly allowed, and there is nothing in-the record to indicate that the appellant was prejudiced in any way by the action, of the court in allowing the amendments. (248 Miss, at 257, 158 So.2d at 23.)
In Carruth v. Easterling, 247 Miss. 364, 150 So.2d 852 (1963), in upholding the ac *477 tion of the lower court in allowing plaintiff to amend his declaration in a replevin suit, we said:
Amendments to pleadings are liberally allowed under our court procedure. Sec. 1511, Miss.Code 1942, Rec. Moreover, amendments may be made to the pleadings in replevin actions. * * *
In 46 Am.Jur., Replevin, Sec. 107, p. 60, the textwriter makes the following statement : “Where facts have arisen since the commencement of the action and before judgment which would vary the relief to which the plaintiff or defendant would have been entitled at the commencement of the action, such facts may be alleged in an amended petition, answer, or cross petition.” (247 Miss, at 370, 150 So.2d at 855.)
It has been said that “The right to amend is as liberally accorded in replevin actions as in other causes. The amendment of pleadings is largely a discretionary matter, and a decision on such an application will not be reversed unless it is shown that there has been a clear abuse of discretion by the trial court. * * * Practically the only limitation upon the power of the court to allow plaintiff to amend the complaint is that a new cause of action cannot be introduced * * * 34 Cyc., Replevin, IV, F, 1, a, p. 1489. See also 77 C.J.S. Replevin § 167, pp. 116-117; Kirch v. Davies, 55 Wisc. 287, 11 N.W. 689; Kelly v. Bliss, 54 Wisc. 187, 11 N.W. 488; Cain v. Cody, 3 Cal.Unrep. 489, 29 P. 778. (247 Miss, at 370-371, 150 So.2d at 855.)
 We cannot say that the trial court abused its discretion in permitting the amendment in the present case since no new cause of action was alleged and the amendment was made prior to the beginning of the taking of testimony. For the same reasons, we do not feel that appellants were entitled to a continuance.
The second error assigned is that the circuit court erred in granting appellee’s instructions 4, 5, 6, 7, 8 and 9. Appellants vigorously urge that the granting of these instructions constitutes reversible error. Each of these instructions has been meticulously studied and the authorities cited by appellants have been reviewed, and we cannot agree that the lower court erred in granting them. While they could be more properly phrased, nevertheless, when read together with all the instructions granted to both the appellants and the appellee, we cannot in good conscience say that the jury was misled thereby.
The fourth assignment of error urged by the appellants, namely, that the verdict of the jury is contrary to the overwhelming weight of the evidence, we are also forced to reject. The fact that the ap-pellee was guilty of contributory negligence does not per se make the verdict of the jury contrary to the overwhelming weight of the evidence, assuming that the appellee was negligent. All questions of negligence and' contributory negligence are questions of fact for the jury. Mississippi Code Ann. § 1455 (1956). Furthermore, an instruction on contributory negligence was granted the appellants by the court. This instruction, when read together with the other instructions granted the appellants, fully sets forth in great detail all the appellants’ theories of defense.
It is the third assignment which has caused this Court the greatest concern,, namely, that the verdict of the jury is grossly excessive and evinces bias, passion and prejudice in favor of the appellee. In considering whether or not the verdict of the jury is so grossly excessive as to evince bias, passion and prejudice we must review the facts relative thereto.
At the time of the collision the appellee was thirty-one years of age, married, and the mother of four children, eight, nine,, eleven and thirteen years of age. The ap-pellee testified without dispute that she was dazed and numb immediately following the collision; that she suffered severe headaches and had to go home and go to bed; *478 and that she had severe bruises all over her body. X-rays were taken at Keesler Field, and she was sent to an orthopedic clinic where the orthopedist prescribed that she wear a hard collar in the daytime and a soft cervical collar at night while sleeping in order to keep her neck straight and to give her support
There is no doubt that she received a severe neck whiplash. The record discloses that she was given medication, including tranquilizers, but that she received little relief from the treatment at Keesler. She employed her attorney who recommended that she see Dr. Kindall Gregory for treatment. The record discloses that for the first two months subsequent to the collision she stayed in bed most of the time and was not able to do any housework because of severe pain in her neck and head down to her shoulders. The pain decreased gradually after about two and a half months and then resolved itself into periodic pain, depending upon what efforts she exerted in trying to perform her household duties. She has been unable to sleep well or rest comfortably since the collision, and for a period of three months after the collision she was unable to do any housework at all. Because of the pain and suffering and her inability to perform her work, she became irritable and extremely nervous. The physical pain and suffering and the disability to which she testified are corroborated by her husband, Captain John Richard Herron.
In August 1965 she went back to Dr. Gregory because she had been suffering severe headaches which would last for a period of two or three days. Dr. Kendall Gregory, a specialist in internal medicine certified by the Board of Internal Medicine for specialized training in neurology, is a consultant for both Veterans Administration hospitals in Biloxi and Gulfport and has been appointed on numerous occasions ■to examine and make independent medical examinations in personal injury suits pending in til e United States District Court. He examined Mrs. Herron for the first time in his office on November 4, 1964, which was eighteen days subsequent to the collision. He saw her four times during 1964, ten times in 1965 and one time in January 1966. I-Ie took from her a complete medical history concerning the injuries she received in the collision. Dr. Gregory testified that he performed a complete physical and neurological examination of the appellee and found that she was unable to perform neck movements due to pain. He further found that she had an area of numbness extending downward from above the right collarbone more or less to the fingers of the right hand. The next time he saw Mrs. Flerron was on November 10,1964, the sixth day after his initial examination. At that time she complained of severe numbness and weakness of the right arm and of headaches. She was given more medication for the relief of the headaches and was again seen three weeks later at which time she showed some slight improvement, except that she now noticed that she had a numbness in the right side of her face coming down below her right ear. The doctor noted that ap-pellee had lost three pounds, and she was again seen two weeks later at which time she had lost three more pounds. She also was experiencing a marked tenderness and spasms of the muscles on the right side of her neck and was having difficulty with dizziness, especially with position changes. She was seen several times, and in August 1964 she returned to Dr. Gregory with sharp pains extending into her right arm with rather severe hurting around her neck.
In September 1964 the doctor advised ap-pellee to go to Keesler Air Force Base and receive physiotherapy treatments. It was the doctor’s opinion that she had suffered a whiplash type injury with cervical sprain injury with probable stretch injury to the nerves in her right shoulder and arm or brachial plexus. However, the subsequent examination and the fact that appellee had continued to experience numbness and aggravation with precipitation of attacks of neck pain and headaches on turning her head to the left, resulted in the doctor diagnosing her injury as a herniated cervical *479 disc in the region of the fourth or fifth cervical vertebra. Dr. Gregory further testified that in order for appellee to obtain relief she will require major surgery which will have to be performed by a neurosurgeon. He testified that the injury she received in the collision in question is a permanent injury and that appellee will require further extensive medical care and treatment for these injuries in the future.
In support of appellants’ assignment that the verdict of the jury is grossly excessive and evinces bias, passion and prejudice, the appellants point out that Dr. Gregory admitted on cross-examination that he was not a neurosurgeon and, in fact, performed no surgery; that Dr. Gregory further admitted that the x-rays taken of Mrs. Herron’s spine were negative insofar as any fractures or dislocations were concerned and that the only way it could be medically proven that Mrs. Herron had a herniated disc was for her to have a myelogram performed. The appellant urges also that Dr. Gregory said he could not say positively that Mrs. Her-ron had a herniated disc, and he admitted that he had never recommended a myelo-gram for the appellee. The record discloses that even a myelogram when taken will not unequivocally designate a herniated disc; that myelograms are not recommended because there is some danger attendant upon their use to detect a herniated disc; and that it is only when an operation is impending that myelograms are required. Appellants also urge the fact that the doctor’s bills for x-rays and laboratory tests amounted to only $221 as proof that appellee’s injuries were superficial.
The amount of a doctor’s bill does not per se indicate the seriousness of the injuries of the patient. There is nothing in this record to indicate to us that Dr. Gregory is not well qualified as a specialist in internal medicine who has had specialized training in neurology. The doctor’s testimony was frank insofar as his limitations with reference to surgery to the spine are concerned or insofar as the taking of a myelogram test is concerned. It is true that much of the testimony in this case is subjective in that it was offered by the appellee, but her testimony was largely substantiated by that of Dr. Gregory.
We have reviewed the cases cited by both appellants and appellee relating to the amount of damages awarded in various personal injury cases and have reached the conclusion that the verdict of $40,000 under the proof in this case is excessive and evinces bias, passion and prejudice on the part of the jury toward the-appellants. In Kincade & Lofton v. Stephens, 50 So.2d 587 (Miss.1951), we pointed1 out the well established principle that in personal injury cases this Court will not. disturb the jury’s verdict unless it is so excessive as to evince corruption, passion, prejudice or bias on the part of the jury. The cases upholding this basic rule are-legion and do not require citation.
After considerable deliberation, we liave-reached the conclusion, however, that the verdict in this case is excessive and not inline with the verdicts in the cases hereinafter cited. Greyhound Corp. v. Kindle, 240 Miss. 702, 128 So.2d 567 (1961); Stoner v. Colvin, 236 Miss. 736, 110 So.2d 920 (1959); Brown & Root, Inc. v. Continental Southern Lines, 228 Miss. 15, 87 So.2d 257, 926 (1956); Dixon v. Breland, 192 Miss. 335, 6 So.2d 122 (1942); Randall v. Skinner, 187 Miss. 602, 192 So. 341 (1939); Biedenharn Candy Co. v. Moore, 184 Miss. 721, 186 So. 628 (1939); Pickwick Greyhound Lines, Inc. v. Silver, 155 Miss. 765, 125 So. 340 (1929).
For this reason this case is reversed and remanded for retrial on the question of damages only, provided the appellee does not within fifteen days after the entering of this judgment accept a remittitur of $10,000. If the remittitur is accepted so that the appellee’s verdict is reduced to $30,000, the *480 ■case is affirmed. Otherwise, the case is remanded for a retrial on damages only.
Affirmed with remittitur; otherwise reversed and remanded on the question of damages only.
ETHRIDGE, C. J., and JONES, INZER and ROBERTSON, JJ., concur.