AYCOCK *v.* BURNETT *et al.*

(Division B. May 5, 1930.)

[128 So. 100. No. 28581.]

Collins & Collins, of Laurel, for appellant.

512

W. S. Welch and Ellis B. Cooper, both of Laurel, for appellees.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellant was plaintiff and filed a suit in the circuit court for damages for an injury occasioned by the collision of an automobile driven by Coburn Hinton and R. J. Burnett and a Ford truck driven by the plaintiff. The suit was filed against R. J. Burnett, Barnett Burnett, and Coburn Hinton. It appears that R. J. Burnett and Coburn Hinton were going south in the direction of Laurel from a point north of Stringer, Mississippi, and that the plaintiff, Max Aycock, was going north from Laurel, and had crossed the railroad at Stringer, and was proceeding north. There was a car parked on the right-hand side going north and another near by, parked on the left-hand side going north, or the right-hand side coming south. These cars were not very distant from each other, and it appears that the truck going north occupied by the plaintiff passed the car situated on the right-hand side of the road, and the defendant had passed the car on the

right coming south, and the collision occurred near this point.

There is considerable conflict in the evidence as to the facts. From the plaintiff's standpoint it appears that he was traveling north, and had passed the car upon the right, and had returned to the right-hand side of the road, and was near the right-hand side of the road at the time of the collision, and that the car driven by the defendants was upon the same side of the road, in other words, on the left of the center of the road for a car coming south, and that the defendants were traveling at a high rate of speed. From the defendants' standpoint, the defendants were traveling south at the rate of speed of about twenty-five miles an hour, and had turned to pass the car parked on the west side of the road, the right coming south, and the plaintiff did not turn back to the right after passing the car, as they expected him to do, and as from their viewpoint he ought to have done; that, when they saw he was not going to turn, they put on brakes, and a collision occurred near the center of the road. The collision was not a head-on collision, but was a collision between the fenders of the two cars.

There is also considerable dispute as to the location of the cars after the injury. It was the contention of the plaintiff that he was traveling at twenty or twenty-five miles an hour going north, and that the defendants were traveling at about fifty miles per hour. Other witnesses estimated the speed of the plaintiff's car at from twenty to fifty miles an hour and that of the defendants at from twenty-five to fifty or sixty miles per hour. It appears from some of the witnesses that the plaintiff's car was within two or three feet of the ditch on the right-hand side of the road going north, and that the defendants' car was on the same side of the road. Some witnesses place the defendants' car on the west or left-hand side of the road going north, or the right-hand coming south. There were some witnesses who testified to observing the cars

and the putting on of the brakes, and, after the brakes were put on, the car turned toward the left of the defendants' car; and some witnesses testified to observing the car tracks, and stated that the tracks indicated that the car turned to the left after the brakes were put on. There was a hopeless conflict in the evidence as to what was done at the time of the injury. The plaintiff was injured, having his face bruised, his chest bruised and his legs bruised, a tooth broken, one knocked out and several loosened, he was bloody, and was in the hospital several days and unable to follow his employment for about sixty days.

It appears that Barnett Burnett was not in the car at the time, and the car seems to have been owned, at least in the major part, by Barnett Burnett. R. J. Burnett was an occupant of the car being driven by his son-in-law, who appears to have been in business in Jasper county above Stringer. R. J. Burnett desired to go to Laurel, and asked Coburn Hinton, his son-in-law, if he did not desire to go also, and, as he did, they took the car, and Hinton drove it, R. J. Burnett being unable to drive a car or not being a driver of the car. There were peremptory instructions both in favor of R. J. Burnett and Barnett Burnett. In order to connect R. J. Burnett with the collision, the plaintiff introduced the following statements:

"Q. Have you had any conversation with Mr. R. J. Burnett since that injury? A. I have.

"Q. What was said by him with reference to this car that was being driven at the time, the car he was in? (Objection.)

"Q. Did you talk to Mr. Burnett with reference to this? A. Yes, sir.

"Q. What was it that was said with reference to the car they were driving? A. He said the car didn't belong to him altogether. He said he traded his old car and gave his son a hundred dollars to finish paying on it with

the understanding he could use the car for business and other purposes. . . .

"Q. How long after the accident was it you had that conversation with Mr. Burnett? A. About three months."

The case was submitted to the jury on instructions as to Coburn Hinton. One of the instructions going for the defendants and objected to reads as follows:

"The court instructs you for the defendants that it was the duty of plaintiff in passing the parked car to turn to his right as soon as practical after passing the car. And his failure so to do, if any, was negligence and if you should believe his failure so to do, if any, was the sole, proximate cause of the collision it is your duty under your oaths to find for the defendants."

Another instruction given and complained of reads: "The court tells you that even if you should believe defendants were on the wrong side of the road, still if you believe from the evidence that plaintiff saw the defendants and knew they were on the wrong side of the road and that he, plaintiff, by turning to the right could have avoided the injury and that he failed so to do and that such failure was the sole, proximate cause of the accident, it is your sworn duty to find for the defendants." And also the following instruction: "The court instructs you that the defendant had a right to believe that the plaintiff would turn to his right as soon as practical after passing the car parked on the road, and they had a right to rely on this belief."

As to the first instruction set out, we would not reverse the case if that was the only complaint, although it is not properly framed, and does not require the jury to believe from the evidence against any default of the defendants. In other words, it does not negative negligence on the part of the defendants as well as on the part of the plaintiff. Probably it was intended to convey this by the phrase "if it was the sole proximate cause of the col-

lision.'' We think the instruction is improperly drafted and should be modified on another trial.

The second one, where the court told the jury that although they might believe the defendants were on the wrong side of the road, still, if they believe that plaintiff saw the defendants, and knew they were on the wrong side of the road, and that plaintiff, by turning to the right, could have avoided the injury, and failed to do so, and such failure was the sole and proximate cause of the accident, it is the duty to find for the defendants, we think is error. If the defendants were on the wrong side of the road, they could reasonably be expected to get on the right side when they saw another car approaching, and the plaintiff had some right to assume that they would do the reasonable thing at the proper time, and he was not required to absolutely get out of the road. The instruction is certainly misleading, and putting the phrase ''and such failure was the sole, proximate cause of the accident'' does not cure the defects. It is a little difficult to see how, where both parties are negligent, the negligence of one is the sole proximate cause of the accident. There are cases, of course, like a car dashing in front of a train at a point where it would be impossible for the train crew to avoid the accident, or anticipate its presence, where such might be true.

The next instruction, saying that the court instructs you that the defendants had a right to believe that the plaintiff would turn to the right as soon as practical after passing the car parked on the road, and that they had a right to rely on this belief, is error as applied to the evidence in the case, because some of the evidence shows that the defendants were on the wrong side of the road thmselves, and this instruction does not contain any statement of the position of the respective parties, or anything by which it could be made proper. A party seeing another party approaching and in a position where, if such position is not changed, danger would ensue, cannot just sit silently and rely upon the other party to do

the thing required to avoid the accident. The duty to avoid accidents and collisions is mutual and reciprocal generally, and each party should do what the situation reasonably requires of him, and not rely entirely upon the other party doing everything that is necessary to avoid the injury.

Taking the instructions together, we think they were misleading and erroneous, and the judgment should be reversed and a new trial be had. We also think it was error to give the peremptory instruction as to R. J. Burnett; there was evidence to show that he was interested in the car, had some rights in it and control over it, and in a limited sense he was the owner of the car. We also think the trip to Laurel was largely, if not entirely, at his instance and for his purposes, at least he was a joint adventurer in the trip, and not a mere guest of the driver of the car. There is enough evidence to show that the driver was acting for his accommodation and benefit, and it is sufficient to go to the jury upon the question as to his liability. See Oliver v. Myers, 144 Miss. 852, 110 So. 666, 50 A. L. R. 357.

Reversed and remanded.