GULF, M. & O. R. Co. *v.* JOINER.

(In Banc.   Feb. 24, 1947.)

[29 So. (2d) 255.   No. 36320.]

Wilbourn, Miller & Wilbourn and **J. V. Gipson**, all of Meridian, and **W. M. Maloney**, of Mobile, Ala., for appellant.

446

Parker & Busby, Fred Rogers, J. C. Floyd and A. B. Amis, all of Meridian, for appellee.

448

449

Argued orally by **J. C. Wilbourn**, for appellant, and by **A. G. Busby**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

This suit is governed by the Federal Employers' Liability Act, Title 45, U. S. C. A. Sec. 51. which provides, in substance, among other things, that every common carrier by railroad, while engaged in interstate commerce, "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, . . . for such injury or death resulting in whole or in part from the negligence of any of the . . . employees of such carrier, . . ."

And Title 45 U. S. C. A. Sec. 54, provides, among other things, that, "such employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence of any of the . . . employees of such carrier; . . ."

The railroad section foreman, Mr. J. E. Joiner, for whose death the administratrix recovered a judgment on behalf of the estate in the trial court against the appellant, Gulf, Mobile & Ohio Railroad Company, was killed by an automobile log truck driven by Mr. Clanton Lockley on January 2, 1943, while the said section foreman was engaged in interstate commerce. The accident occurred at the intersection of a paved highway, twenty feet in width, and the main line of the defendant railroad, in the town of Scoba, Mississippi, after Mr. Joiner had alighted from a railroad motor car into the highway in front of the approaching log truck.

At the intersection, the highway runs east and west and the railroad north and south. The log truck was traveling east, on a clear day, and the driver thereof could have seen the motor car coming from the south for a distance of at least one hundred feet, after he had passed a seed house seventy-one and four-tenths feet from the main track on which the motor car was traveling. Likewise, the operator of the motor car, Mr. Love Hairston, as well as the plaintiff's intestate who was in charge of the motor car and its crew of seven or eight section hands and whose duty it was to give the necessary signals to the operator for the safety of the crew and the movement of the motor car, could have, of course, seen the log truck for the same distance as it approached the railroad crossing after it passed this seed house.

Before the log truck passed the said seed house it had passed another one slightly farther to the west. When the log truck was between these seed houses, the driver looked toward the south and didn't see the approaching motor car, since it was evidently, as he testified, behind the seed house nearer to the railroad track at that time. He did not look toward the south again, but to the north. Nor did he look straight ahead, according to his own testimony, after passing the second seed house which was located as aforesaid a distance of seventy-one and four-tenths feet from the main line track (which was the farthest of the three tracks to the east), until his truck was ready to crash into the "push car" attached behind the motor car as a trailer. He had started the log truck at a gasoline filling station at a distance of approximately one hundred sixty-five feet from the scene of the accident, and he testified at the trial that he was driving about ten to fifteen miles per hour; and he says that he could have stopped his truck at any time within four or five feet if he had looked in the direction he was traveling and had seen the motor car and trailer which were, according to the plaintiff's proof, traveling at about the same rate of speed as his own in approaching the crossing. He didn't

even see Mr. Joiner, the deceased, until he saw his body lying in the highway between the bumper of the log truck and the trailer of the motor car, after he had derailed the trailer, by pushing it off on the east side of the track, at a time when the motor car had more than cleared the south half of the highway.

The trailer was uncoupled from the motor car by the impact and the south end thereof was farther to the east than was the front end thereof. The combined length of the motor car, coupling and trailer, was approximately eighteen feet, and the trailer having been struck in the south half of the twenty-foot wide highway, and the rear end thereof having been pushed farther to the east as aforesaid, the proof is conclusive to the effect that not only did the motor car enter the intersection first, but that the driver of the log truck could have stopped in time to avert the accident after the motor car was entering upon the intersection if he had been looking ahead, as it was his duty under the law to do, since he testified as aforesaid that he could have stopped the truck in four or five feet if he had seen the motor car.

There is no dispute in the evidence as to the matters of fact hereinbefore stated as facts, and, in our opinion, there seems to be no logical basis for any different conclusions therefrom than those above drawn.

But the appellee administratrix contends that, nevertheless, the admittedly gross negligence of the driver of the log truck was not the sole proximate cause of the death of Mr. Joiner; but that his death was due in part to the negligence of Mr. Hairston, operator of the motor car, for which the railroad company would be liable.

To establish the alleged negligence of the railroad employee Hairston, the plaintiff introduced three members of the section crew, two of whom were riding on the trailer and the other on the motor car as it entered, or was about to enter, upon the crossing before being struck by the log truck.

No unfavorable inferences are to be drawn against either the plaintiff or defendant for failure to introduce the riding companion of the log truck driver or the other three or four sections hands, who were riding on the motor car, since they are not shown to have been available when the case was tried more than three years after the accident.

The plaintiff's witness, Earnest Dale, heard Mr. Joiner holler one time "ho," meaning stop. He first testified that this occurred "right at the crossing." The plaintiff's attorneys then plead surprise and were permitted to cross-examine him. He then stated that this command was given about one and one-half rail lengths (a rail length being thirty-nine feet) south of the crossing. Then upon cross-examination by the defense attorneys, he went back to his original statement and again testified positively two or three times that the command was given at the crossing. At any rate, he jumped for safety and landed on the north side of the highway. This witness was sitting on the east side of the motor car and was facing east, whereas Mr. Joiner was on the west side facing west.

The plaintiff's next witness was Baxter Little, who had been seated on the trailer, and he testified that Mr. Joiner "hollered a little bit before we got on the crossing." And when asked "How much did he lack getting on the crossing when he hollered?" he answered: "I imagine the distance from here to you," meaning the distance from the witness to the attorney examining him. He had first seen the log truck when the motor car was almost a rail, or a rail and a half length from the crossing. He wasn't looking at Mr. Joiner, he says, but that he "lots of times" held out his hand toward approaching traffic and said "ho," and on the occasion complained of he admitted that he wasn't looking at him and didn't know whether he held out his hand toward the log truck or not when he said "ho." Having seen the truck approaching and thinking the driver "was going to stop,

until he got right close up," this witness jumped off the trailer and landed about nine and a half feet south of the crossing, when the front end of the eighteen-foot car and trailer were evidently at or on the intersection. He also answered in the affirmative a question as to whether he heard the command "ho," given "when this motor car was crossing the highway crossing."

Neither of these witnesses, Dale and Little, claimed to have heard the command "ho" given but one time.

The plaintiff's other eyewitness to the circumstances connected with the accident was John Clark, who says that when the motor car was one rail-length from the crossing, Mr. Joiner stood up, commenced waving his hands, "both ways" and hollered "ho, ho, ho," and that this meant for the operator of the motor car to stop. He further testified, however, that "I made my escape to get off when I looked around and he was hollering 'ho.' " He was on the east side of the trailer, facing east, and he jumped and landed in the north side of the highway. He was asked: "Now what if anything did Mr. Joiner do to try to stop the log truck?" And answered, "I don't know what he done, only just flagging both hands, hollering 'ho' "; that he just kept on doing so. He was finally asked: "Now the reason you jumped, John, was because you were facing the east and when you heard your boss hollering 'ho' and looked and saw him waving his hands, you knew there was danger in the wind? A. Yes, sir. Q. And that is when you jumped off? A. That is when I jumped off." As heretofore stated, he landed in the north half of the twenty-foot highway, although he was riding on the trailer.

All of these witnesses testified unequivocally that they thought the log truck was going to stop, before they determined to jump for safety. And Mr. Joiner evidently thought the same thing, even while the motor car was crossing the south half of the paved highway, since he then got in front of the log truck in that portion of the

highway when it did not stop, and was struck by it and killed.

For the defense, it was shown without dispute that Mr. Hairston was operating the motor car under the direct supervision, control and jurisdiction of the section foreman, Mr. Joiner; that it was the duty of the latter to give the necessary signals as to what should be done when the motor car arrived at such intersection, and particularly to watch out for approaching traffic on the highway and signal the driver of the motor car whether to stop or proceed in the event there was some one approaching the crossing. And it necessarily follows that without regard to what duty the operator may have owed not to negligently injure a member of the traveling public using the highway, under the principle announced in the case of Aycock v. Burnett, 157 Miss. 510, 128 So. 100, he had the right to rely upon and obey a signal given by his section foreman as between himself and such foreman, who had authority to direct his action and was occupying a more advantageous position ahead of him on the motor car to see and determine whether the motor car could safely pass ahead of an approaching truck, and especially is this true while the operator of the motor car was looking at and operating its controls. Here no liability can be imposed against the railroad company unless its employee Hairston crossed the crossing without the necessary signal or in disobedience of the command of the section foreman to stop.

Mr. Hairston testified that when he was approaching the crossing from the south, and some forty to fifty feet therefrom, he came to a very slow rate of speed, which is not disputed, and that Mr. Joiner then arose on the front of the motor car, where he was in position to view the entire situation, after the log truck had approached to within thirty-eight to fifty feet of the crossing, and at which point it was last observed by Mr. Hairston, and then when the motor car was within fifteen to twenty feet of the crossing Mr. Joiner motioned to him with his hand

to cross the crossing, thereby giving the usual signal. That he thus motioned twice, whereupon he, the witness, released his brakes and re-applied the pulling power on the motor car, looking down at the levers or controls while doing so, and that he did not, therefore, see Mr. Joiner when he left the motor car and got into the highway. Mr. Hairston remained on the motor car until it stopped north of the crossing and was not injured.

No one testified that any further signal was given to the operator after the motor car arrived within fifteen to twenty feet of the crossing, except that, as shown by the testimony of the plaintiff's witnesses heretofore referred to, Mr. Joiner hollered "ho" when they were at or on the crossing, and this is true even though he may have hollered "ho" at a rail-length, or a rail and a half length, south of the crossing before deciding to give the signal to the operator to come ahead and cross the same.

What is said in the last above paragraph does not fail to take into consideration the fact that when the witness John Clark, who was on the trailer and facing east, was being asked about signals being given at other times to pass over the crossing, said that "he hadn't did that then, he hadn't given no motion," and the fact that he was asked:

"Q. Did he motion him to come on across? A. He didn't give no motion to come on across.

"Q. Well, did he motion him on across before that happened? A. I don't know."

But when it is considered that it was the duty of Mr. Hairston alone to watch Mr. Joiner for a signal, and that he could not proceed without one under the circumstances, and that the witness John Clark was in a less advantageous position to have seen the motion of Mr. Joiner's hand and was under no duty to watch for a signal, and in view of his other testimony showing that he was looking around at the log truck, which he says he thought was going to stop, before he decided to jump to the east for safety after watching its advance toward him, and was not therefore

looking ahead toward the men on the motor car, we are of the opinion that the testimony of this witness, together with the negative testimony of the witnesses Dale and Little, who merely say they didn't see the signal to the operator to cross, amounts to no more than a scintilla of evidence that the signal for the motor car to cross the highway was not given.

Mr. Hairston, the only other white man in the section crew, was being trained by Mr. Joiner to become a section foreman, and it therefore appears to be altogether unlikely that he would have deliberately jeopardized his employment and chances for promotion by wilfully disobeying a positive command from his foreman to stop the car at some thirty-nine to sixty feet from the crossing, since he admits that he could have stopped it within ten feet if such a command had been given before he was less than ten feet from the crossing.

On the other hand, it is entirely reasonable that Mr. Joiner should have thought, from his advantageous position for viewing the situation, that the motor car and trailer could safely cross ahead of the log truck, or, on the other hand, that he thought, as did all the other witnesses, that the log truck would stop before colliding with the trailer. As a matter of fact, his judgment was almost entirely vindicated by the fact that the motor car did actually clear the south half of the highway, before the rear end of the eighteen-foot outfit was struck there and knocked farther to the east than the front end of the trailer.

In the recent case of Brady, Adm'x v. Southern Railway Co., 320 U. S. 476, 64 S. Ct. 232, 234, 88 L. Ed. 239, the well settled rule was again announced to the effect that "the weight of the evidence under the Employers' Liability Act must be more than a scintilla before the case may be properly left to the discretion of the trier of fact—in this case, the jury. Western & A. R. [Co.] v. Hughes, 278 U. S. 496, 49 S. Ct. 231, 73 L. Ed. 473, supra; Baltimore & O. R. Co. v. Groeger, 266 U. S. 521, 524, 45 S. Ct. 169,

69 L. Ed. 419. Cf. Gunning v. Cooley, 281 U. S. 90, 94, 50 S. Ct. 231, 74 L. Ed. 720, 724; Marion County Com'rs v. Clark, 94 U. S. 278, 284, 24 L. Ed. 59, [61]. When the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict, the court should determine the proceeding by nonsuit, directed verdict or otherwise in accordance with the applicable practice without submission to the jury, or by judgment not withstanding the verdict.''

Therefore, without discounting the credibility of the witnesses, since their credibility is for the jury in cases under the Federal Employers' Liability Act, and giving the proper weight to their testimony in estimating distances on the occasion complained of, the fact remains that it was thoroughly established that the motor car was occupying the crossing in plenty of time for the log truck to have thereafter stopped in time to avert the collision, and that the failure of the driver to see it and to stop was the sole proximate cause of the death of Mr. Joiner, except to such extent as he may have been negligent himself. Cf. Gulf, M. & N. R. Co. v. Addkison, 189 Miss. 301, 194 So. 593, and the case therein cited, on the question of sole proximate cause where the driver on the highway saw, or should have seen, the obstruction.

After a most careful study of the testimony in this case we are unable to say that there is more than a scintilla of evidence that any negligence on the part of the driver of the motor car was a proximate contributing cause of the unfortunate death of the plaintiff's intestate. And the judgment appealed from must therefore be reversed.

Reversed and judgment here for appellant.

Griffith, J., delivered a concurring opinion.

It seems to me that this appeal is properly to be controlled by the following plain facts, which are either wholly undisputed or else are admitted by appellee:

It is undisputed that the railroad track ran north and south and that the paved highway, 20 feet in width, ran east and west. It is undisputed that the railroad motor car, together with its trailer, was 18 feet in total length. It is admitted by the appellee that as the railroad motor car reached the crossing, it was traveling at the same rate of speed, ten to fifteen miles per hour, as that of the east-bound log truck approaching the crossing. It is undisputed that the log truck struck the trailer about its middle. Therefore, it follows that after the railroad motor car had reached the center of the highway, thereby blocking the south half of the highway on which half the log truck was traveling, the railroad motor car traveled thence northward all of its own length and half of the length of the trailer, or 13½ feet, while the log truck was traveling a like distance of 13½ feet in approaching the point where it collided with the middle of the trailer. The driver of the empty log truck admitted in his own testimony, and it is undisputed, that he could have stopped his truck in four or five feet, whence it further follows that the truck driver had ample time and opportunity after the crossing was blocked to stop without colliding with the trailer had he complied with the duty imposed by law upon him to look ahead.

When the railroad motor car, together with its trailer, arrived at and was upon the railroad crossing, it had the legal right to be there—upon its own track, as to which it then had priority and this regardless of any operative negligence of the railroad employee inter sese by which it came to be there. Its presence there was a fact completed and was a fact wholly independent of, and had no motivating connection or relation whatever with the approaching log truck, which in its approach was moving of its own completely independent force and direction. Hence the presence of the railroad motor car and trailer had set up merely a condition and was not an efficient cause as known to the law of negligence—a causa sine qua non, not the causa causans—if the log truck had the inde-

pendent time and opportunity to avoid colliding with the trailer, as the testimony shows without dispute that it did so have.

In Mississippi Export R. Co. v. Summers, 194 Miss. 179, 11 So. (2d) 429, 905, one of our latest cases, it was shown that while the railroad crew was engaged in switching operations, a box car was left standing on the highway crossing for more than five minutes in violation of Sec. 7780, Code 1942—in other words, that the box car was negligently there not only, but was illegally there. Summers driving a southbound truck on the highway ran into the box car and was killed, the further evidence being that had he complied with his legal duty to look ahead, he could have seen the box car in ample time to stop. The court held that the negligence of Summers, the truck driver, was the sole proximate cause of the collision and of the consequent deaths so far as the railroad was concerned.

And the court cited, with approval, St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 217, 56 A. L. R. 1110, wherein, on facts similar to those in the Summers case, the Court said: "As for the injuries received by running into the train, the obstruction of the highway is not to be considered as the efficient cause of such injuries, but merely as a condition which in and of itself furnishes no cause of action, and the fact that the condition of obstruction is unreasonably prolonged makes no difference in the application of the rule." And an unbroken line of cases in our state going back to Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750, is cited in the Summers case, the effect of all of which is that when a collision occurs between an automobile or truck and a railroad car on the railroad crossing and the driver of the automobile or truck has ample time to stop, had he been looking ahead, the negligence of the driver of the automobile or truck is the sole proximate cause of the collision, relegating the negligence of the railroad, if any, to a position of actual and legal remoteness.

So here and to summarize the railroad motor car and trailer had occupied the crossing, thereby furnishing merely a condition, for a sufficient length for the driver of the log truck to avoid running into it, and when he ran into the trailer his negligence was the sole proximate cause of the collision and injury, thus entitling the railroad to the peremtory charge which it requested.

**Roberds, J.**, delivered a specially concurring opinion.

I concur in the result reached in this case for this reason: Liability is grounded on the negligence of Hairston. If he was negligent it was because he failed to obey the "ho" signal given by Joiner when he could have done so by the exercise of reasonable care. That signal was given by Joiner either fifty-eight feet before reaching the crossing, or it was given right at the crossing. There is no real dispute that Joiner gave the go-on signal to Hairston fifteen to twenty feet before reaching the crossing; therefore, so far as Hairston's duty was concerned, this go-on signal nullified the previous "ho" signal if the "ho" signal was given fifty-eight feet back. If the "ho" signal was given just as the motor car approached or entered the crossing, then Hairston could not have stopped the motor car before entering upon the crossing. In neither case was Hairston guilty of negligence.