The CHESAPEAKE AND OHIO RAIL-WAY COMPANY, a corporation, Appellant,

v.

Harry L. BURTON, Appellee.

No. 6876.

United States Court of Appeals Fourth Circuit.

Argued Nov. 17, 1954.

Decided Dec. 7, 1954.

Amos A. Bolen, Huntington, W. Va. (William C. Beatty, Huntington, W Va., Strother Hynes, Richmond, Va., and Fitzpatrick, Marshall, Huddleston & Bolen, Huntington, W. Va., on brief), for appellant.

No brief and no argument for appellee.

Before SOPER and DOBIE, Circuit Judges, and THOMSEN, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a judgment entered by the United States District Court for the Southern District of West Virginia on a jury verdict returned in favor of Harry L. Burton (hereinafter called Burton) in a civil action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, against the Chesapeake and Ohio Railway Company (hereinafter called Chesapeake), a railroad engaged in interstate commerce. After entry of judgment, Chesapeake moved the District Court to set aside the verdict and judgment and to enter judgment for Chesapeake in accordance with its previous motion for a directed verdict. This motion was overruled, and Chesapeake has appealed to us.

Two questions are presented on this appeal: (1) whether or not there is sufficient evidence to support the jury's finding of negligence on the part of Chesapeake; and (2) whether, if there was such negligence, it proximately contributed to Burton's injuries. We think the evidence is not sufficient to support such a finding of negligence, and, further, that if there were such negligence, it was merely a condition, not a proxi-mate cause of the injuries received by Burton. The District Court, accordingly, erred in overruling Chesapeake's motion to set aside the verdict and judgment, and the judgment below must be reversed.

Burton had for a long time been a conductor on Chesapeake's railroad. On November 24, 1950, at about six P.M., Burton left Chesapeake's yards at Russell, Kentucky, as conductor in charge of an empty coal train bound for Cane Fork yards in Kanawha County, West Virginia. This train consisted of an engine, one hundred and thirty-three empty coal cars and a caboose, in which Burton was riding. The normal load of empty coal cars is between one hundred and fifty-five and one hundred and sixty, regardless of weather conditions; a lesser number, however, was moved on this occasion either because more were not needed or because empty cars were in short supply.

The engine pulling this train was of the K-4 type. This was the largest type of road engine used on the Russell-Cane Fork run and was the type of road engine in general freight service on Chesapeake's railroad. Before starting the journey, the engineer inspected the engine, found that its sanders were operating, that its headlight was burning and that it was otherwise in proper operating condition.

When the train left Russell snow was falling, and the ground was covered with from three to six inches of snow. By about 11:30 P.M. the train had reached a point 1.7 miles from the Cane Fork yards. There is a slight upgrade at this spot, and for some unknown reason the train stalled there, blocking the grade crossing where West Virginia State Route 79 crosses the tracks at Giles, West Virginia. The last twenty-seven cars of the train failed to clear this crossing. It was still snowing, with the temperature below freezing, and the ground at this point was covered with about fifteen inches of snow. Visibility was very poor.

The engineer got out and made an inspection which revealed that the sand

pipes of his engine had become clogged with snow and ice. He believed that the whole train could be moved into Cane Fork if sand were used on the tracks but decided that it would be simpler to cut the train and take the cars into the yard in sections. The Cane Fork yard could not accommodate the entire train on one track, and in any event it would have been necessary to break up the train a short distance from where it was standing. Therefore, after an unsuccessful attempt to start the engine, the engineer sent the head brakeman back along the train with instructions to disconnect the first fifty-three cars from the rest of the train. Before the brakeman had reached his destination, the air was "dumped," or allowed to escape from the train line by Burton at the rear of the train. This process locks all the brakes on the train and is a standard signal to the engineer to move the train ahead as soon as he has pumped up the air and can release the brakes.

Burton left the caboose at the time of the stall and had gone forward along the tracks to the grade-crossing. Seeing that several vehicles were waiting to cross, Burton had cut the train below the crossing and dumped the air to signal the engineer to move the train ahead.

The engineer pumped up the air and moved the train forward about two car lengths; at which time, he testified, the air was dumped a second time, stopping the train. The forward section of the train moved such a short distance that a part of the last coal car in the forward section still partially blocked the crossing. The engineer then received a signal from the brakeman and moved the first fifty-three cars on into the Cane Fork yard.

Burton testified that he did not dump the air a second time and that he does not know why the train stopped the second time. Finding that the crossing was still partially blocked, Burton placed himself on the grade crossing in front of the blocking coal car. The highway crossed the railroad at an angle and Burton placed himself along side of the projecting coupling equipment so that he was able to move in only one direction if an automobile approached. He intended to signal approaching motorists with an electric torch which he carried in his hand and also to help recouple the train when it was ready to proceed.

After about twenty minutes Burton saw a vehicle approaching the crossing. He signalled with his torch but the vehicle, a panel body truck, continued on its way and struck Burton, crushing him against the railroad car. As a result, he suffered a broken left leg and his right leg had to be amputated above the knee. He brought the present action against Chesapeake to recover for these injuries.

■ The Federal Employers' Liability Act, 45 U.S.C.A. § 51, does not make a railroad company an insurer against personal injuries to its employees. Before the employee may recover he must prove that negligence of the railroad was the proximate cause of his injury. See Chesapeake and Ohio Railway Co. v. Thomas, 4 Cir., 198 F.2d 783, 788, certiorari denied 344 U.S. 921, 73 S.Ct. 387, 97 L.Ed. 709.

Burton asserts that Chesapeake was negligent in failing to provide an engine or engines with sufficient power to pull the train. The record shows, however, that the coal train dispatched by Chesapeake was being pulled by the most powerful engine ever used on this particular run, that this engine had been inspected before the trip and that it was pulling a smaller number of empty cars than was usual. The weather was very severe but Chesapeake had never sent out, on this run, a train with more than one engine, regardless of weather conditions.

■ Before a case, under the Federal Employers' Liability Act, may be left to the jury, there must be more than a mere breath of evidence which tends to show negligence on the part of the railroad. Brady v. Southern Ry. Co., 320

U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239; Fore v. Southern Ry. Co., 4 Cir., 178 F.2d 349. At best, the record here displays a mere scintilla of evidence which might show negligence on the part of Chesapeake in failing to furnish an engine with sufficient power to pull the train.

■ Burton further alleges that Chesapeake was negligent in not furnishing him a safe place in which to work. There is no evidence to support such a claim. A railroad conductor's place of work does not become unsafe merely because his train has stopped, even though the train may be blocking a crossing at the time it stops. We hold, therefore, that there was no evidence from which the jury could justifiably find Chesapeake guilty of negligence.

■ Even if negligence on the part of Chesapeake had been shown, Burton has failed to clear another hurdle. There is no evidence tending to show a causal connection between Chesapeake's negligence and Burton's injuries. Any such negligence was a mere condition here, not a proximate cause. In Gulf, M. & O. R. Co. v. Joiner, 201 Miss. 442, 29 So.2d 255, 261, a case brought under the Federal Employers' Liability Act, the court said:

"When the railroad motor car, together with its trailer, arrived at and was upon the railroad crossing, it had the legal right to be there— upon its own track, as to which it then had propriety and this regardless of any operative negligence of the railroad employee inter sese by which it came to be there. Its presence there was a fact completed and was a fact wholly independent of, and had no motivating connection or relation whatever with the approaching log truck, which in its approach was moving of its own completely independent force and direction. Hence the presence of the railroad motorcar and trailer had set up merely a condition and was not an efficient cause as known to the law of negligence—a causa sine qua non, not the causa causans—if the log truck had the independent time and opportunity to avoid colliding with the trailer, as the testimony shows without dispute that it did so have."

After the train had stopped, Burton placed himself in the middle of the road in front of the coal car, in a position from which he could not move without great difficulty. He was struck by a truck driven by a man who admittedly had been drinking. The injuries which Burton received would not have occurred but for his actions and the actions of a third party. Burton decided himself on his course of conduct after the train stalled. He could easily have chosen a safe place or position from which he could have signalled with his torch to approaching drivers of motor vehicles. In such a situation any negligence of the railroad in stopping the train created a mere condition which had no causal connection to the injury received. See Wolfe v. Henwood, 8 Cir., 162 F.2d 998, certiorari denied 332 U.S. 773, 68 S.Ct. 88, 92 L.Ed. 357.

For the reasons stated, the judgment of the District Court must be reversed and the case must be remanded to that court with instructions to enter judgment in favor of the defendant, Chesapeake and Ohio Railway Company.

Reversed.