887 So.2d 192 (2004)
STATE FARM AUTO INSURANCE COMPANIES, as Subrogee of Sheila Barnes, and Sheila Barnes, Individually, Appellants,
v.
Dora DAVIS, Appellee.
No. 2003-CA-01057-COA.
Court of Appeals of Mississippi.
November 16, 2004.
*193 James "Paul" Clinton, Mobile, AL, attorney for appellants.
Michael Earl Keyton, Port Gibson, Attorney for appellee.
EN BANC.
BRIDGES, P.J., for the Court.
¶ 1. On September 2, 1999, Sheila Barnes and Dora Davis were traveling in opposite directions on old Highway 18 in Claiborne County. As Barnes approached, Davis executed a left turn across Barnes's lane of travel resulting in a collision. Barnes and State Farm Insurance Companies, as subrogee of Barnes, its insured, subsequently filed the present action against Davis seeking indemnification for damages paid as a result of Davis's alleged negligence.
¶ 2. The jury in the Circuit Court of Claiborne County returned a verdict in favor of Davis. State Farm and Barnes then filed a motion for judgment notwithstanding the verdict, but the motion was denied. Aggrieved by the decision, they appeal claiming said denial was in error.
¶ 3. Upon thorough review of the record, we find the jury's verdict to be contrary to the overwhelming weight of the evidence. Accordingly, we reverse and render.

LAW AND ANALYSIS
¶ 4. Considering the material facts surrounding the collision and all rational inferences possibly drawn therefrom, the verdict rendered by the Claiborne County jury, absolving Davis of any negligence whatsoever, absolutely defies logic. The evidence presented at trial established that Davis was negligent as a matter of law for failing to maintain a proper lookout and to yield the right-of-way. I begin with a brief recital of the applicable law.
¶ 5. The long-standing law in Mississippi declares that the province of the court extends to questions of law while that of the jury extends to questions of fact. Cantrell v. Lusk, 113 Miss. 137, 144, 73 So. 885, 886 (1916). Actions in negligence are generally regarded as founded in fact, and for that reason the legislature *194 mandated that "[a]ll questions of negligence and contributory negligence shall be for the jury to determine." Miss.Code Ann. § 11-7-17 (Rev.2004); Philco Distrib., Inc. v. Herron, 195 So.2d 473, 477 (Miss.1967). However, Rule 50 of the Mississippi Rules of Civil Procedure is a device by which the court is authorized "to enforce the rules of law by taking away from the jury cases in which the facts are sufficiently clear that the law requires a particular result." M.R.C.P. 50, cmt. The Mississippi Supreme Court has explained that the jury is to determine the issue of negligence, "unless the doing of the act which caused the injury complained of is not in dispute or conclusively appears from the evidence, and no inference except that of negligence or of no negligence can be justly drawn therefrom, in which event the question is for the determination of the trial judge." City of Greenville v. Laury, 172 Miss. 118, 122, 159 So. 121, 122 (1935). The record reveals that there was no issue of fact and conclusively establishes that Davis was negligent; therefore, the trial judge should have decided the case.
¶ 6. The only fact that could be even argued as in dispute arises from a variance in testimony between that of Davis and Barnes regarding the actual point of impact in relation to a curve in the road. The precise location, however, is inconsequential to the outcome of the case, and the only definitive, relevant fact gained from their testimony in this regard is that Barnes came around a curve shortly before impact.
¶ 7. The evidence before the jury clearly proved negligence by Davis. To maintain an action in negligence, the plaintiff has the burden of proving that (1) he was owed a duty by the defendant; (2) defendant's conduct was a breach of that duty; (3) defendant's breach was the proximate cause of injury to plaintiff; and (4) plaintiff suffered damage as a result of injury. Hadad v. Lockeby, 176 Miss. 660, 669, 169 So. 691, 693 (1936). The Mississippi Supreme Court explains that negligence is "the result of the failure to perform a duty, therefore actionable negligence cannot exist in the absence of a legal duty to an injured plaintiff," and whether such duty exists is a question of law to be decided by the court. Stanley v. Morgan & Lindsey, Inc., 203 So.2d 473, 475 (Miss.1967) (citations omitted). Davis's duty was statutorily imposed. The Mississippi legislature codified the "Rules of the Road" for the purpose of protecting those who use the roads, thereby establishing that every motorist owes a duty to every other traveler to exercise reasonable care to prevent injury and to operate his motor vehicle in accordance with the statutes. Miss.Code Ann. §§ 63-3-1 to XX-X-XXXX (Rev.2004); Aycock v. Burnett, 157 Miss. 510, 128 So. 100 (1930). Failure to act in accordance with the statutes does not in and of itself establish negligence; however, violation of the statutes will be generally found to constitute "negligence per se" if (1) the plaintiff was in the class of persons the statute was designed to protect, and (2) the injury the plaintiff sustained was the kind of injury the statute was designed to prevent. Byrd v. McGill, 478 So.2d 302, 304-05 (Miss.1985).
¶ 8. The specific statutory duties with which Davis was required to comply, as applicable to the facts at bar, include maintaining a proper lookout, as codified in Miss.Code Ann. § 63-3-707 (Rev.2004), and yielding the right-of-way, as codified in Miss.Code Ann. § 63-3-803 (Rev.2004). These duties are implicated when a motorist, inter alia, crosses a lane of opposite flowing traffic and were accordingly designed to protect the motorists whose lanes are being crossed. Davis was *195 crossing Barnes's lane of traffic, so Barnes certainly falls in that class of protected persons. The duties were designed to facilitate safe passage across opposing lanes, thereby avoiding collisions. Barnes was injured when she collided with Davis, so Barnes certainly suffered the particular injury the statute was designed to prevent. As a result, Davis was per se negligent. Accordingly, a verdict should have been returned in favor of Barnes because the violation of the statute by Davis was the unequivocal proximate cause of Barnes's injury.
¶ 9. However, even if Barnes's collision with Davis was not to be considered the product of per se negligence by Davis, the facts presented at trial unconditionally demonstrate that the collision was the result of Davis's negligence. As previously noted, Davis, in executing a left-hand turn, owed Barnes the statutory duties of maintaining a proper lookout and yielding the right-of-way. An abbreviated analysis of Mississippi's case law, regarding conduct required to satisfy these duties, makes Davis's failure fully evident and is as follows: Shideler v. Taylor, 292 So.2d 155 (Miss.1974) (It is duty of an automobile driver to see that which is in plain view, open and apparent, to take notice of obvious danger, and to be on alert so as to avoid collision with objects, vehicles, and others using highway.); Campbell v. Schmidt, 195 So.2d 87 (Miss.1967) (A motorist is charged with seeing what he should have seen.); Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 141 So.2d 226 (1962) (A motorist has a duty to keep his automobile under control and to keep a lookout in the direction in which he is proceeding, and he must at all times be vigilant and anticipate and expect the presence of others and cannot assume that the way is clear.); Tippit v. Hunter, 205 So.2d 267 (Miss.1967) (The driver of an automobile is chargeable with the knowledge of all conditions which would be obtainable by the exercise of his faculties, and it is his duty to see that which is in plain view or open and apparent and to take notice of obvious dangers.); Sohio Petro. Co. v. Fowler, 231 Miss. 72, 94 So.2d 350 (Miss.1957) (A motorist is under a duty to keep proper lookout and be on alert for other vehicles using highway and a statutory duty not to turn her vehicle from a direct course upon a highway unless and until such movement can be made with reasonable safety, and then only after giving appropriate signal by hand, arm, or signal device in event any other vehicle might be affected by such movement.); Flynt v. Fondren, 122 Miss. 248, 84 So. 188 (1920) (A driver of a motor vehicle must keep a lookout for other vehicles and persons and keep his machine under control and cannot assume that the road is clear but must under all circumstances and at all times be vigilant and anticipate and expect the presence of others, and if he fails to do so, he is negligent.).
¶ 10. Davis maintains that she kept a proper lookout before turning across Barnes's lane. This contention, however, is supported by nothing other than her self-serving testimony, which is contradicted by the facts of the case. Davis's testified on direct as follows:
Q. And [Ms. Davis] were you paying attention?
A. Yes.
Q. How would you describe yourself as a driver?
A. Good. Careful.
Q. Is that all of the time or some of the time?
A. That's all of the time because my life is in danger just like everybody else coming down the road.
Q. Now, prior to making that left, did you see Sheila Barnes?

*196 ...
A. No, I didn't.
Q. Were you looking for a vehicle coming from that direction?
A. Yes.I  it's a curve.
Q. Would you  were you paying extra attention to that?
A. Yes.
Q. And what happened after you began making that left?
A. All of a sudden, something hit my car, a car hit me. Well, she hit my car.
¶ 11. In conjunction with the duties of maintaining a proper lookout and yielding the right-of-way, Davis was additionally "under a duty to use care commensurate with all the circumstances and the danger reasonably to be anticipated." Freeze v. Taylor, 257 So.2d 509, 512 (Miss.1972). In her testimony, Davis alluded to the fact that she was extra careful in executing this particular left-hand turn because visibility of approaching vehicles is limited by a curve in the road immediately ahead of where she was turning. Therefore, the degree of caution Davis was required to exercise in making that particular left turn grew in direct proportion to the potential danger that was involved. As Davis testified, she simply looked and then, having seen nothing, turned. From these facts, no reasonable person could find that Davis met the minimal standard of care, i.e.,"to keep a reasonable lookout to the front and side of her moving vehicle to keep it under reasonable and easy control, and to anticipate and expect the presence of other vehicles which were also using the highway at the same time," Fielder v. Magnolia Beverage Co., 757 So.2d 925, 934(¶ 32) (Miss.1999), much less the heightened standard produced by the potential of danger.
¶ 12. Counsel for Davis questioned Barnes in an apparent effort to elicit testimony from which the jury could possibly determine whether Barnes saw Davis's car in time to avoid the collision or infer that Barnes failed to avoid the collision because she was speeding or not paying proper attention. Barnes testified on cross-examination as follows:
Q. Now, then you're getting ready to take that left  when Mrs. Davis got ready to take that left, at some point in time, she couldn't see you as you were coming around the curve; isn't that correct?
A. I wasn't in the curve. I was on the straight road when the accident happened. I had passed the curve. I was visible. I saw Ms. Davis come up the left side of the road, but I had the right-of-way, so I continued to travel to where I was going. It was Ms. Davis to stop and wait until I passed by. I wasn't in the curve.
Q. Let's talk about that. Okay.
A. I had the right of way.
Q. At what point in time did you see Ms. Davis?
A. I saw her as I approached traveling down the highway. I saw the other vehicle come up, you know, on the left side of the road.
Q. You were looking around the curve? Is that your testimony?
A. I wasn't in the curve.
Q. You had left the curve; is that your point?
A. Yes.
The corollary to the contention that Barnes saw Davis's car in time to avoid colliding with her, however, fatally undermines the inference it attempts to advance, i.e., if Barnes saw Davis in time to avoid colliding with her, Davis should have seen Barnes in time to avoid being hit. Additionally, Barnes was not required to approach *197 Davis in anticipation of having to avoid hitting her because she could reasonably assume that Davis would not suddenly turn in her lane and across her path. Lewis v. Brogdon, 208 So.2d 761, 765 (Miss.1968).
¶ 13. Furthermore, Barnes testified on direct and cross-examination to the fact that she was not speeding, and no evidence to the contrary was offered. Moreover, none of the evidence at trial lends itself to infer that Barnes was not paying attention. No reasonable individual could resolve the facts of this case finding that Barnes was contributorily negligent, and even if Barnes was found to be contributorily negligent, that fact alone does not preclude her from recovering damages. See Philco Distrib., 195 So.2d at 477. Most significant, however, is the rule that "the testimony of a witness which is uncontradicted, and who is not impeached in some manner known to the law, where he is not contradicted by the circumstances, must be accepted as true." Wilson v. Blanton, 130 Miss. 390, 398, 94 So. 214, 216 (1922).
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF CLAIBORNE COUNTYIS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, P.J., MYERS, CHANDLER, GRIFFIS AND ISHEE, JJ., CONCUR. IRVING, J., DISSENT WITH SEPARATE WRITTEN OPINION JOINED BY KING, C.J., AND BARNES, J.
IRVING, J., Dissenting.
¶ 15. A Claiborne County jury, on disputed evidence, returned a verdict for Appellee Dora Davis in an action brought by Sheila Barnes, and by State Farm Auto Insurance Companies, Barnes's subrogee. The majority, substituting its judgment for the judgment of the jury, nullifies the jury's verdict, reverses, and renders judgment in favor of Barnes and State Farm. Considering the standard of review which we, as a reviewing court, are obligated to honor, I do not believe that the majority is warranted in taking away the verdict of the jury which undeniably was returned on disputed facts. Therefore, I respectfully dissent.
¶ 16. To demonstrate the disputed issues of fact, I quote from the testimony of the drivers of the two vehicles involved, Dora Davis and Sheila Barnes, who were traveling in opposite directions on old Highway 18 in Claiborne County when Davis executed a left turn across Barnes's lane of travel. As will be seen, this testimony demonstrates more eloquently than anything I or the majority can say to justify our respective positions. I quote first from the direct examination testimony of Dora Davis, the appellee:
Q. And [Ms. Davis] were you paying attention?
A. Yes.
Q. How would you describe yourself as a driver?
A. Good. Careful.
Q. Is that all of the time or some of the time?
A. That's all of the time because my life is in danger just like everybody else coming down the road.
Q. Now, prior to making that left, did you see Sheila Barnes?
* * *
A. No, I didn't
Q. Were you looking for a vehicle coming from that direction?
A. Yes.I  it's a curve.

*198 Q. Would you  were you paying extra attention to that?
A. Yes.
Q. And what happened after you began making that left?
A. All of a sudden, something hit my car, a car hit me. Well, she hit my car.
¶ 17. I next quote from the cross-examination testimony of Sheila Barnes, State Farm's subrogee, and one of the appellants.
Q. Now, then you're getting ready to take that left  when Mrs. Davis got ready to take that left, at some point in time, she couldn't see you as you were coming around the curve; isn't that correct?
A. I wasn't in the curve. I was on the straight road when the accident happened. I had passed the curve. I was visible. I saw Ms. Davis come up the left side of the road, but I had the right-of-way, so I continued to travel to where I was going. It was Ms. Davis to stop and wait until I passed by. I wasn't in the curve.
Q. Let's talk about that. Okay.
A. I had the right of way.
Q. At what point in time did you see Ms. Davis?
A. I saw her as I approached traveling down the highway. I saw the other vehicle come up, you know, on the left side of the road.
Q. You were looking around the curve? Is that your testimony?
A. I wasn't in the curve.
Q. You had left the curve; is that your point?
A. Yes.
¶ 18. Based on the quoted passages, it is clear beyond reasonable dispute that Davis's and Barnes's testimony raise an issue of fact as to whether Barnes negligently plowed into Davis simply because, as Barnes put it, "[she] had the right-of-way, so [she] continued to travel to where [she] was going" or whether Davis negligently executed a left turn because, despite her testimony  that she was paying extra attention to the direction from which Barnes came and did not see Barnes  Barnes was in a position to be seen and was too close to the intersection for Davis to be able to safely execute the left turn.
¶ 19. The majority finds that State Farm was entitled to a directed verdict or judgment notwithstanding the verdict because Davis's negligence was proven as a matter of law. For its finding, the majority relies primarily on the provisions of Mississippi Code Annotated section 63-3-803 (Rev.2004) which states in relevant part:

The driver of a vehicle within an intersection intending to turn to the left shall yield the right-of-way to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. However, said driver, having so yielded and having given a signal when and as required ... may make such left turn and the drivers of all other vehicles approaching the intersection from said opposite direction shall yield the right-of-way to the vehicle making the left turn.
Miss.Code Ann. § 63-3-803 (Rev.2004) (emphasis added).
¶ 20. Clearly, the critical factual issue before the jury was whether Barnes's vehicle was either within the intersection before Davis began executing her left turn or was so close thereto as to constitute an immediate hazard if Davis then executed the left turn. Barnes does not contend that she was within the intersection when *199 Davis executed the left turn. Therefore, the jury's focus, based on the evidence presented, had to be on whether Barnes's vehicle was so close as to constitute a hazard for anyone attempting to make a left turn across her lane of travel. Deciding this issue was the classical role of a jury.
¶ 21. The majority says that Davis's counsel's attempt on cross-examination to prove that Barnes was at fault by demonstrating that she saw Davis in time to avoid colliding with her "fatally undermines the inference [such cross-examination] attempts to advance, i.e., if Barnes saw Davis in time to avoid colliding with her, Davis should have seen Barnes in time to avoid being hit." Accepting as true the corollary suggested by the majority, does not support the result reached by the majority. All that would mean is that there existed a question of fact for the jury to resolve, i.e., did Davis see, or should have seen, that Barnes was too close for Davis to safely execute the left turn or was Barnes far enough away for Davis to safely execute the left turn but negligently ran into Davis because Barnes felt she had the right-of-way, notwithstanding Davis's position. Barnes was not entitled to a directed verdict simply because an accident occurred and because she said she had the right-of-way at the time of the collision. And because of the disputed nature of the evidence, Barnes was not entitled to a JNOV after the jury ruled against her.
¶ 22. While I do not know what caused the jury to vote as it did, there is no doubt that there was sufficient evidence presented that would entitle the jury to decide as it did. As already observed, there was testimony that Davis kept a proper lookout, was paying attention, looked down the highway before executing the left turn, and had turned on her left turn signal before executing the turn. There was also testimony that there was a curve in the road just ahead of the point where the accident occurred. On the other hand, there was testimony that the road was straight where the accident occurred.
¶ 23. The fact that Davis turned across Barnes's lane of travel does not prove conclusively that Davis was negligent. This seems to be the majority's view. It was undisputed that she had turned on her left turn signal. If the jury accepted Davis's testimony, as it was permitted to do, it could find that, at the time she began executing her left turn, no other vehicle was approaching from the opposite direction within the intersection or so close thereto as to constitute an immediate hazard. Embracing Barnes's testimony the jury could have determined that she saw Davis's vehicle in time to avoid the accident. As observed, Barnes testified that she saw Davis's car approaching on the left side of the road. She did not state how close Davis's car was to her car when she first saw Davis's vehicle. If she had time to avoid striking Davis, she had no right to plow into her simply because she initially had the right-of-way. The jury might have inferred that  because Barnes did not state the distance between the two cars when she first saw Davis's car  she saw Davis's car in time to avoid the accident or that the accident was not avoided because Barnes was speeding or not paying attention until it was too late.
¶ 24. Again, while I cannot know the basis for the jury's verdict, the law is clear that whatever conflicts exist in the evidence, they are to be resolved by the jury. Venton v. Beckham, 845 So.2d 676, 687(¶ 36) (Miss.2003). The verdict of the jury should be left alone when reasonable *200 and fair-minded persons in the exercise of impartial judgment might reach different conclusions. Stubblefield v. Jesco, Inc. 464 So.2d 47, 54 (Miss.1984). In my judgment, that is the situation presented by the facts of this case. Accordingly, I respectfully dissent from the decision of the majority to elevate itself above the jury and invade the province of this significant player in our esteemed judicial system. I would affirm.
KING, C.J., AND BARNES, J., JOIN THIS SEPARATE OPINION.